*130
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Domestic Relations Law § 236 (B) (3) states that a nuptial agreement made before or during the marriage must satisfy three requirements to be "valid and enforceable in a matrimonial action.” First, the agreement must be in writing. Second, it must be subscribed by the parties and third, it must be "acknowledged or proven in the manner required to entitle a deed to be recorded.” At issue here is the validity of a written postnuptial agreement that was signed by the parties but not acknowledged. Because neither the statute’s unambiguous language nor its history suggests that the Legislature intended the acknowledgment prerequisite to be dispensable, we conclude that the unacknowledged agreement here is unenforceable.
 

 I.
 

 Plaintiff Louise Matisoff and defendant Stephen J. Dobi were married on April 13, 1981. Because of defendant’s two prior unsuccessful marriages, plaintiff wished to protect her real property and other assets in the event that their marriage failed. Thus, at plaintiff’s urging, the parties entered into a postnuptial agreement one month later. At the time, plaintiff was a real estate salesperson in the New York cooperative apartment market, and defendant was an advisor to the Commissioner of the New York City Department of Cultural Affairs. Each earned approximately $40,000 annually.
 

 The agreement provided that the parties waived any rights of election pursuant to the Estates, Powers and Trusts Law "and other rights accruing solely by reason of the marriage” with regard to property presently owned or subsequently acquired by either party. It further specified that "neither party shall have nor shall such party acquire any right, title or claim in and to the real and personal estate of the other solely by reason of the marriage of the parties.” The agreement was drafted by an attorney friend of plaintiff and signed by both plaintiff and defendant. It is undisputed, however, that the document was not acknowledged by the parties or anyone else.
 

 Throughout their 13-year marriage, plaintiff and defendant maintained substantially separate finances. They kept separate bank accounts; divided household, vacation and entertainment costs; borrowed money from one another; reimbursed each other for occasional purchases made on the other spouse’s
 
 *131
 
 credit card; and either filed individual tax returns or separately paid proportional shares of a joint return.
 

 During the first few years of marriage, defendant, who had previously fulfilled most of the requirements for a Ph.D. in film, completed his dissertation and received his Ph.D. After working in the performing arts and film fields for several years, defendant decided to attend business school. He received a Masters in Business Administration in 1987 and subsequently worked as a stock market research analyst in a New York City investment firm.
 

 This divorce action was commenced on September 17, 1992. By that time, defendant’s annual salary had risen to over $400,000, while plaintiff continued to earn approximately $40,000. Defendant sought to enforce the postnuptial agreement as a bar to any claim of entitlement by plaintiff to his property acquired before or during the marriage. Plaintiff, however, contended that the agreement was invalid because it was not acknowledged as required by Domestic Relations Law § 236 (B) (3). Both parties testified at trial that they had signed the agreement, and neither made any allegation of fraud or duress.
 

 Supreme Court deemed the agreement unenforceable, concluding that admissions by the parties, during a divorce trial 13 years later, that the signatures on the agreement were genuine failed to validate the unacknowledged agreement. The court granted the divorce, divided the marital property and awarded plaintiff monthly maintenance and attorney’s fees.
 

 The Appellate Division reversed, one Justice dissenting. The majority held that failure to comply with the statutory requirement of acknowledgment did not constitute an absolute bar to enforcing a nuptial agreement. Noting that the purpose of the statute was to prevent fraud and overreaching in marital contracts, the court found that here there was no allegation by plaintiff of fraud, duress or misunderstanding. To the contrary, it was plaintiff who had insisted upon the agreement to protect her property interests, and the agreement had been drafted by an attorney selected by her. The court further concluded that the terms of the postnuptial agreement "were acknowledged and ratified in the daily activities and property relations of the parties throughout [the] marriage” (228 AD2d 200, 202). The Appellate Division thus determined that, in these particular circumstances, the nuptial agreement should be enforced.
 

 We disagree. Under the Appellate Division analysis, the enforceability of an unacknowledged nuptial agreement would
 
 *132
 
 vary with the original motivation of the party challenging the agreement and whether the couple’s behavior during the marriage was consistent with the terms of the agreement. Such uncertainty is contrary to the plain language of Domestic Relations Law § 236 (B) (3), which recognizes no exception to the requirement of formal acknowledgment. We therefore reverse, holding that the requisite formality explicitly specified in Domestic Relations Law § 236 (B) (3) is essential. Because the Appellate Division never reached the trial court’s equitable distribution and maintenance determinations, we remit to that court for review of Supreme Court’s award in light of our determination.
 

 II.
 

 Domestic Relations Law § 236 (B) was enacted in 1980 as part of the Equitable Distribution Law, which significantly reformed the New York statutory scheme governing division of property, economic life and familial rights and obligations upon dissolution of a marriage
 
 (see,
 
 L 1980, ch 281). In keeping with the strong public policy in favor of individuals resolving their own family disputes
 
 (see,
 
 Scheinkman, New York Law of Domestic Relations § 6.1, at 123), subdivision (3) authorizes spouses or prospective spouses to contract out of the elaborate statutory system and provide for matters such as inheritance, distribution or division of property, spousal support, and child custody and care in the event that the marriage ends.
 

 Domestic Relations Law § 236 (B) (3) provides that such "[a]n agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties,
 
 and acknowledged or proven in the manner required to entitle a deed to be
 
 recorded” (emphasis added).
 

 Pursuant to the Real Property Law, proper acknowledgment or proof is an essential prerequisite to recording a deed in the office of the county clerk
 
 (see,
 
 Real Property Law § 291). Such acknowledgment or proof, moreover, must meet various specifications. The Real Property Law dictates who may make an acknowledgment or proof
 
 (see,
 
 Real Property Law § 292); before whom such acknowledgment or proof may be made
 
 (see,
 
 Real Property Law §§ 298, 299); that an officer taking an acknowledgment must "know[ ] or [have] satisfactory evidence, that the person making it is the person described in and who executed such instrument” (Real Property Law § 303;
 
 see also,
 
 Real Property Law § 304 [concerning proof by subscribing wit
 
 *133
 
 ness]); that the person taking the acknowledgment or proof must attach a certificate of acknowledgment
 
 (see,
 
 Real Property Law § 306); and the contents of that certificate
 
 (see, id.).
 

 The agreement here is concededly unacknowledged and, therefore, does not comply with the terms of Domestic Relations Law § 236 (B) (3). Defendant argues that literal compliance with the statutory requirement of acknowledgment is not required so long as the purpose of that requirement is satisfied. Plaintiff, on the other hand, urges that the statute mandates strict compliance with its terms.
 

 Generally, acknowledgment serves to prove the identity of the person whose name appears on an instrument and to authenticate the signature of such person. According to defendant, acknowledgment is thus essential only where fraud, duress or mistake is alleged with regard to a nuptial agreement. He contends that where, as here, the party seeking to void an agreement admits having signed the agreement, the agreement was entered into at that party’s behest, and the couple conducted its economic affairs in a manner consistent with the terms of the agreement, there is no issue of fraud or overreaching and the absence of acknowledgment does not undermine the validity of the agreement.
 

 We are thus faced with a not-unfamiliar dilemma for courts charged with interpreting statutes: should we be guided by the apparent rationale underlying a statute or by its actual terms? Indeed, more than a century ago this Court observed that
 

 "we are warned on the one side that the strict letter of the law is not to master its obvious spirit and intent; and on the other that we are judges and not legislators, and must not assume to make exceptions or insert qualifications, however justice may seem to require it. Both warnings are just and sanctioned by authority, and must have their influence upon our judgment”
 
 (Chamberlain v Spargur,
 
 86 NY 603, 606).
 

 Most often, the letter and spirit of the law are congruent, or any alleged disparities can be reconciled. Thus, where a statute’s language is capable of various constructions, the "obvious spirit and intent” of a statute necessarily informs the meaning and import to be accorded that language. Likewise, the use of unequivocal language sheds light on a law’s purpose and intent. Here, the statute is clear and precise. Domestic Relations Law § 236 (B) (3) requires acknowledgment for a valid,
 
 *134
 
 enforceable marital contract, excepting no agreement. The statute itself thus provides no support for defendant’s contention that the Legislature intended some agreements, though unacknowledged, to be enforceable.
 

 Nor does the history of Domestic Relations Law § 236 (B) (3) reflect such an intent. Prior to adoption of section 236 (B) (3), the validity of an antenuptial agreement was determined by the Statute of Frauds, which provides that an agreement "made in consideration of marriage,” other than mutual promises to marry, is void unless "some note or memorandum théreof be in writing, and subscribed by the party to be charged therewith” (General Obligations Law § 5-701 [a] [3];
 
 see, Matter of Goldberg,
 
 275 NY 186; Scheinkman, New York Law of Domestic Relations § 6.4, at 124). As noted by defendant, oral agreements that violate the Statute of Frauds are nonetheless enforceable where the party to be charged admits having entered into the contract
 
 (see, Cohort & Co. v Russell,
 
 23 NY2d 569, 574). Defendant urges that an admitted marital agreement should likewise be enforceable.
 

 Domestic Relations Law § 236 (B), however, does not incorporate the safeguards of the Statute of Frauds. Rather, it prescribes its own, more onerous requirements for a nuptial agreement to be enforceable in a matrimonial action. In particular — by contrast to the Statute of Frauds — Domestic Relations Law § 236 (B) (3) mandates that the agreement be acknowledged. We have concluded that, under a similar statute specifically requiring a writing to be acknowledged, admission to the contract does not save an unacknowledged agreement. Thus, where the statute governing a spouse’s waiver of elective share required that the waiver be in writing, subscribed and acknowledged, an unacknowledged agreement was held invalid even though the challenging party conceded having signed the agreement
 
 (see, Matter of Warren,
 
 16 AD2d 505,
 
 affd
 
 12 NY2d 854;
 
 see also, Matter of Henken,
 
 150 AD2d 447).
 

 Defendant further points out that, with regard to deeds, the lack of acknowledgment may not be fatal to enforcement between the parties or their heirs and representatives
 
 (see, Strough v Wilder,
 
 119 NY 530). To be sure, under both statute and common law, an unacknowledged deed is ineffective only "as against a subsequent purchaser or incumbrancer”
 
 (see,
 
 Real Property Law § 243;
 
 Strough v Wilder,
 
 119 NY at 535 [construing former Rev Stat of NY, part II, ch I, tit 2, § 137 (1st ed)]).
 

 
 *135
 
 It does not follow, however, that an unacknowledged post-nuptial agreement is likewise valid between the parties. Domestic Relations Law § 236 (B) (3) refers only to the recordation requirements for deeds. Under Real Property Law § 291, which deals with recording of conveyances, an unacknowledged deed simply cannot be recorded. Real Property Law § 291 goes even further, explicitly voiding unrecorded conveyances as to certain nonparties — those who subsequently purchase or acquire the property. Real Property Law § 243 similarly specifies that unacknowledged grants are ineffective only "as against a subsequent purchaser or incumbrancer.” These Real Property Law restrictions are unrelated to the necessary steps for recording a deed in the first instance and thus are not incorporated into section 236 (B) (3). Furthermore, Domestic Relations Law § 236 (B) (3), in contrast to these provisions, broadly provides that acknowledgment is required in order for a nuptial agreement to be enforceable
 
 in any matrimonial action
 
 — which necessarily involves the parties to the agreement.
 

 Manifestly, the unambiguous statutory language of section 236 (B) (3), its history and related statutory provisions establish that the Legislature did not mean for the formality of acknowledgment to be expendable.
 

 True, arguments can be made in support of the subjective standard espoused by the. Appellate Division. Most notably, a flexible rule would allow courts to examine all the circumstances and overlook the absence of acknowledgment where that result most comports with the parties’ intent and behavior during the marriage. Such facts may well be present here— where it was plaintiff who originally insisted upon the post-nuptial agreement, maintained a financial existence independent of defendant, and admitted signing the document. "It is not novel in the law, however, to find a harsh result where statute or public interest requires strict and full compliance with certain formalities before rights may be predicated”
 
 (Matter of Warren,
 
 16 AD2d at 507,
 
 supra).
 

 In any event, persuasive policy arguments can also be made in favor of a rule that mandates compliance with the formality required by the statute.
 

 Primarily, a bright-line rule requiring an acknowledgment in every case is easy to apply and places couples and their legal advisors on clear notice of the prerequisites to a valid
 
 *136
 
 nuptial agreement.
 
 [1]
 
 Consequently, spouses or prospective spouses will not need to speculate as to whether the enforceability of their agreements will be supported by their original motivation or subsequent economic relationship during the marriage. Certainly, consistent and predictable, enforcement is desirable with regard to such important marital agreements. Furthermore, many of the equitable factors highlighted by defendant and the Appellate Division will continue to be relevant to the trial court’s award of property, maintenance and the like, as well as to appellate review of such award.
 

 Acknowledgment, moreover, serves a valid purpose apart from prevention of fraud. Marital agreements within section 236 (B) (3) encompass important personal rights and family interests. As we explained with regard to the similar prerequisites for proper execution of a deed of land:
 

 "When [the grantor] came to part with his freehold, to transfer his inheritance, the law bade him deliberate. It put in his path formalities to check haste and foster reflection and care. It required him not only to sign, but to seal, and then to acknowledge or procure an attestation, and finally to deliver. Every step of the way he is warned by the requirements of the law not to act hastily, or part with his freehold without deliberation”
 
 (Chamberlain v Spargur,
 
 86 NY at 607,
 
 supra).
 

 Here, too, the formality of acknowledgment underscores the weighty personal choices to relinquish significant property or inheritance rights, or to resolve important issues concerning child custody, education and care.
 

 In the end, it was for the Legislature, not the courts, to weigh these policy interests and choose between a flexible or bright-line rule. Here, by clearly prescribing acknowledgment as a condition, with no exception, the Legislature opted for a bright-line rule. We therefore hold that an unacknowledged agreement is invalid and unenforceable in a matrimonial action.
 

 III.
 

 Defendant alternatively argues that, even if strict compliance with the formality of acknowledgment is required,
 
 *137
 
 plaintiff’s “oral acknowledgment” at trial that the parties signed the agreement cured any deficiency in the postnuptial agreement.
 

 Domestic Relations Law § 236 (B) (3) and the Real Property Law do not specify when the requisite acknowledgment must be made. It is therefore unclear whether acknowledgment must be contemporaneous with the signing of the agreement.
 

 While this Court has affirmed determinations allowing parties to provide the requisite acknowledgment under similar statutory requirements at a later date, we have never directly addressed the question whether and under what circumstances the absence of acknowledgment can be cured (see,
 
 Matter of Maul,
 
 176 Misc 170,
 
 affd
 
 262 App Div 941,
 
 affd
 
 287 NY 694 [unacknowledged waiver of elective share valid where acknowledgment subsequently supplied];
 
 Matter of Palmeri,
 
 75 Misc 2d 639,
 
 affd
 
 45 AD2d 726,
 
 affd
 
 36 NY2d 895 [same]; see
 
 also, Matter of Stegman,
 
 42 Misc 2d 273 [antenuptial agreement valid where acknowledged several years after its execution]).
 
 [2]
 
 We note that other courts have refused to allow subsequent acknowledgment (see,
 
 Rose v Rose,
 
 167 Misc 2d 562 [shareholder’s agreement that was not acknowledged could not form basis of conversion divorce and could not be subsequently acknowledged]; see
 
 also, Pacchiana v Pacchiana,
 
 94 AD2d 721, 721-722,
 
 appeal dismissed
 
 60 NY2d 586 [unacknowledged waiver of elective share “void and of no effect at its inception”]).
 

 We need not resolve this issue today. Even assuming, without deciding, that the requisite acknowledgment could be supplied at the time of the matrimonial action, each party’s admission in open court that the signatures were authentic did not, by itself, constitute proper acknowledgment under section 236 (B) (3).
 

 The statute prescribes acknowledgment “in the manner required to entitle a deed to be recorded.” This requires both that an oral acknowledgment be made before an authorized officer and that a written certificate of acknowledgment be attached
 
 (see,
 
 Real Property Law §§ 291, 306). As this Court has explained, “[a]n instrument is not 'duly acknowledged’ unless
 
 *138
 
 there is not only the oral acknowledgment but the written certificate also, as required by the statutes regulating the subject”
 
 (Rogers v Pell,
 
 154 NY 518, 529). Because no proper certificate of acknowledgment was attached to the agreement — indeed, defendant never even requested the requisite certification — the postnuptial agreement here is invalid.
 

 Nevertheless, defendant is entitled to intermediate appellate review of the trial court’s award to plaintiff. This has not yet occurred due to the Appellate Division’s erroneous determination that the agreement was valid, and we therefore remit to that court. Although the equitable factors raised by defendant cannot save the unacknowledged agreement, they may be relevant to the Appellate Division’s review of the award.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division for further proceedings in accordance with this opinion. The certified question should be answered in the negative.
 

 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 [1]
 

 . While it might have been useful to have the additional perspective of the current practice of the domestic relations bar concerning acknowledgment of marital agreements, no
 
 amicus curiae
 
 briefs were submitted in this case.
 

 [2]
 

 . Under EPTL 5-1.1 (f) (2), a spouse’s waiver of release of right to elective share must also be "in writing and subscribed by the maker thereof, and acknowledged or proved in the manner required by the laws of this state for the recording of a conveyance of real property.” Likewise, in order for a separation agreement to constitute grounds for divorce under Domestic Relations Law § 170 (6), the agreement must be "acknowledged or proved in the form required to entitle a deed to be recorded.”